UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARLENE DIXON, as personal representative
of the Estate of MARY AARON,

       Plaintiff,

vs.                                                         CIV 99-1191 KBM/LCS

CHICAGO INSURANCE COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of Plaintiff's Motion for Partial Summary Judgment *(Doc. 25)* and Defendant's Cross-Motion for Summary Judgment *(Doc. 33)*. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that there are no material issues of fact in dispute, and that Defendant is entitled to judgment as a matter of law.

### *Background*

In March 1997, Mary Aaron suffered severe injuries while being transferred by staff of the Buena Vista Retirement Center ("Buena Vista") where she resided. Buena Vista's insurance carrier, Defendant Chicago Insurance Company ("CIC"), provided it with a defense in the lawsuit brought by Plaintiff in New Mexico's Ninth Judicial District Court ("underlying action").

Following a four-day jury trial in June 1999, judgment was entered for Plaintiff against Buena Vista in the amount of $158,544.84 in compensatory damages and $465,000.00 in punitive damages.

Although the insurance contract did not provide for indemnification for any award of exemplary or punitive damages, the policy required CIC to defend any such claims. When CIC refused to pay the punitive damages portion of the judgment on the basis that the contract of insurance clearly excludes coverage for such damages, Plaintiff's collection efforts drove Buena Vista to file for bankruptcy protection. On October 15, 1999, a settlement between Plaintiff and Buena Vista was reached whereby Buena Vista assigned its claims against CIC to the Aaron Estate. Buena Vista retained a right to receive 25 % of the net proceeds, after payment of litigation costs, of any recovery made by Dixon against CIC. In the present action, Plaintiff asserts that because of an untimely reservation of rights, CIC is estopped from denying coverage on the punitive damages awarded against Buena Vista.

CIC concedes that it initially provided Buena Vista with an unconditional defense. Indeed, at the specific request of Dr. Ali Ghaffari and Linda Ghaffari (officers of Buena Vista), CIC retained Michael Garrett to represent Buena Vista in the underlying suit. No reference was made to punitive damages in the original underlying complaint filed in June 1997.[1] One year later, on July 27, 1998, Plaintiff filed her First Amended Complaint in the underlying action. Defendant

---

[1] Prior to the filing of the complaint, however, Plaintiff had submitted a notice of claim to CIC which stated Plaintiff's belief that "there is a substantial likelihood of significant recovery for punitive damages." *(Plaintiff's Exh. 2)* Given that the filed original complaint sought no punitive damages, however, this letter was of no material consequence.

-2-

CIC characterizes the amended pleading as "vaguely assert[ing] claims for punitive damages hidden within other causes of action." *Response Brief at 2*.

It was not until March 17, 1999, just three months prior to the June trial setting, that the Ghaffaris were informed by Mr. Garrett that a claim had been made in excess of Buena Vista's policy limits and for punitive damages not covered by the CIC policy. At Mr. Garrett's urging, Dr. Ghaffari immediately contacted attorney Richard Rowley in an effort to obtain his services as independent counsel. Although Rowley agreed to make a demand for settlement within policy limits, he declined Dr. Ghafarri's request to represent Buena Vista in the underlying action. Rowley informed Dr. Ghaffari that in his opinion, "it would be difficult for him to find any competent attorney who would take on Buena Vista as a client under the circumstances." *Plaintiff's Exh. 11*.

Jennifer Schmidt, the claims attorney handling the case for Defendant, testified by affidavit, "It was not until I received a copy of Plaintiff's Motion for Leave to File an Amended Complaint and Plaintiff's Second Amended Complaint [2] that I became aware that punitive damages were being asserted by Arlene Dixon against Buena Vista." *Defendant's Exh. 3* On April 21, 1999, CIC issued its reservation of rights letter informing Buena Vista that it would not indemnify any punitive damages if awarded in the underlying case. *Defendant's Exh. 7*

### *Issues and Analysis*

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[2] The Second Amended Complaint explicitly set forth a separate claim seeking punitives.

of law." FED. R. CIV. P. 56(c). The Court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence" that would justify sending the case to a jury. *Williams v. Rice*, 983 F.2d 177, 179 (10th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986)). Indeed, summary judgment

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### *1. Was CIC required to reserve its rights?*

Defendant first argues that because it had no duty to indemnify Buena Vista as to punitive damages, CIC was not required to defend under a reservation of rights – timely or otherwise – under New Mexico law. In *American Employers Ins. Co. v. Crawford*, 87 N.M. 375 (1975), the insurance policy excluded coverage for bodily injuries suffered by any of Crawford's employees. Although Crawford maintained that the injured plaintiff in the underlying action was not his employee, the insurance company had its doubts. Nevertheless, American promptly undertook the defense and delayed reserving its rights to dispute coverage until two months later. In this underlying action, the jury awarded the plaintiff $633,000 – well in excess of policy limits.

In the lawsuit filed by Crawford against the insurance company, the court ruled that there was no coverage at all under the policy because of the employee exclusion. Nevertheless, a jury

-4-

awarded Crawford damages based upon its finding of the company's negligence or breach of its obligation to use good faith in dealing with Crawford. The present complaint sets forth virtually identical allegations of negligence and breaches as those asserted in the *Crawford* case.

On appeal, the New Mexico Supreme Court reversed and set forth its rationale as follows:

> It is generally recognized that coverage defenses may be properly preserved by a reservation of rights agreement. [citations omitted] ***However, we do not mean to suggest that the Company in the present case need rely upon the Reservation of Rights Agreement.*** Its only obligation under the policy was to defend Crawford in the tort suit . . . . It has been judicially and finally determined that the Company at no time had a duty under the policy of insurance to indemnify Crawford for his liability to Woolett. Absent any such duty, how did the Company become obliged to resolve the question of coverage prior to the conclusion of the Woolett suit, or become obliged to convey any doubts or decisions it might have entertained concerning this coverage question? What was inappropriate about its written advice to Crawford immediately following the conclusion of the Woolett suit and the resolution of the question of employment upon which the resolution of the coverage question depended? Clearly, the Company violated no contractual obligation to Crawford, and we fail to understand the source or nature of any duty recognized in the law of tort which the Company owed and breached.

*Crawford*, 87 N.M. at 380 [emphasis added]. CIC argues that *Crawford* controls the present case, and mandates summary judgment in its favor.

Dixon, on the other hand, contends that the principles set forth for estoppel in *Pendleton v. Pan American Fire and Casualty Co.*, 317 F.2d 96 (10th Cir. 1963) remain applicable to the present case.

> It is true that a liability insurance carrier that assumes the defense in an action against its insured with knowledge of possible grounds for noncoverage and that does not reserve its right to later deny coverage is precluded from later asserting that no coverage exists. *Pendleton*, 317 F.2d at 99. "[T]he insurer's unconditional defense of an action brought against its insured constitutes a waiver of the terms of the policy and an estoppel of the insurer to assert the defense of noncoverage." *Id.* . . . The reason for the rule estopping the insurer from denying coverage without the reservation of rights is the presumptive potential of prejudice to the insured caused by the insurer's total control of the litigation, the

>  insured's reliance on the insurer, and the insurer's fiduciary duty vis-a-vis the insured.  *Id.*

*American General Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 745 (1990).  In essence, Dixon argues that an untimely reservation of rights equates to a failure to reserve the right to dispute coverage. She asserts that the highlighted *Crawford* language is merely dicta and does not preclude the application of  *Pendleton's* "coverage by estoppel."

Closely examining the *Crawford* opinion, I find it to be distinguishable from the case at bar.  True, in both cases the insurance company provided its insured with a defense as required by the policy.  However, the insurance company in *Crawford* never owed any duty to indemnify the insured.  Although CIC's policy excluded punitive or exemplary damage awards, CIC was under a duty to indemnify compensatory damage awards.  As the *Crawford* court noted:

> Our holding that the Company breached no duty owing to Crawford must obviously depend upon our conclusion that ***none of his claims***, as set forth in the district court's instructions to the jury, was legally sufficient to support ***any*** recovery by him against the Company, or there was not substantial evidence to support any claim.

*Crawford*, 87 N.M. at 379 [emphasis added].  Indeed, where the duty to indemnify is completely absent, the insured could not reasonably rely on the provision of a defense as "creating" coverage where none existed.  Where, as here, the policy provides coverage for some types of damages but not others, failure to defend pursuant to a timely reservation of rights could conceivably lull the insured into believing the company would indemnify any and all damage awards.  Therefore, *Crawford* does not automatically preclude the application of estoppel under these circumstances.

### *2. Estoppel – Knowledge of circumstances triggering the duty to reserve rights.*

Estoppel cannot apply unless the insurance company assumed or continued the defense of an insured with knowledge or constructive knowledge of facts or circumstances indicating noncoverage. *See* 14 COUCH, INSURANCE 3D § 202:54 (3d Ed.). Similarly, estoppel may apply when an insurance company which becomes aware of possible noncoverage during it defense but fails to timely reserve its rights to dispute coverage. *See Penn. Nat. Mut. Cas. Ins. Co. v. Kitty Hawk Airways, Inc.*, 964 F.2d 478 (5th Cir. 1992) (sufficient knowledge to challenge its coverage but assumed and continued defense for more than a year before obtaining an effective reservation of rights).

CIC contends that Ms. Schmidt's affidavit establishes that the company issued its reservation of rights in April 1999 as soon as it became aware or could have been aware of a claim for uncovered damages. However, Plaintiff has come forward with sufficient evidence on this element to support a finding to the contrary. As noted above, CIC admits that the First Amended Complaint filed in July 1998 "vaguely assert[ed] claims for punitive damages hidden within other causes of action." Far from "burying" notice of seeking punitive damages, however, the First Amended Complaint in fact set forth numerous specific factual allegations and expressly characterized Buena Vista's conduct as "extreme," "outrageous," and "in reckless disregard of Mary Aaron's rights." In six separate paragraphs, Plaintiff asserted that she was "entitled to an award or punitive damages to punish the Defendants for their conduct and to deter similar conduct in the future." Yet CIC did not reserve its rights until April of the following year. One could reasonably conclude that CIC had knowledge of facts and circumstances indicating noncoverage and failed to reserve its right to dispute coverage in a timely manner.

### *3. Estoppel – Prejudice must be demonstrated.*

Dixon argues that prejudice in the present case is conclusively presumed and that she is not required to come forward with any evidence of actual prejudice. She relies on both *Pendleton* and *American General* for this proposition.

> The reason for the rule estopping the insurer from denying coverage without the reservation of rights is the ***presumptive potential of prejudice*** to the insured caused by the insurer's total control of the litigation, the insured's reliance on the insurer, and the insurer's fiduciary duty vis-a-vis the insured.

*American General*, 110 N.M. at 745 [emphasis added]. Indeed, the *Pendleton* court stated that when the insurer completely fails to reserve rights, "it is not necessary for the insured to show prejudice in such a situation because he is presumed to have been prejudiced by virtue of the insured's assumption of the defense." *Id*. at 99.

Yet both the *American General* and *Pendleton* decisions dealt with a complete absence of any attempt by the insurer to reserve its rights. It is undisputed that CIC tried to reserve its rights to dispute coverage as to the punitive damages claims. In such a situation, I do not believe prejudice can or should be conclusively presumed. *See Western Casualty & Surety Co. v. City of Santa Fe*, 84 N.M. 409 (1972) (estoppel did not apply because plaintiff failed to rely and act upon conduct of insurer to his prejudice); *see also Hertweck v. State Farm Fire & Cas. Co.*, CIV 98-1411 MV/LFG (D.N.M. Oct.1, 1999). In order to prevail on the claim of estoppel, Plaintiff must show detrimental reliance on the insurance company's failure to timely reserve its right to dispute coverage that resulted in prejudice to Buena Vista. *See State Farm Mut. Auto. Ins. Co. v. Gonzalez*, 83 N.M. 296, 299 (1971) (presumption of prejudice cannot arise from delay alone).

I find that Plaintiff has failed to come forward with sufficient admissible evidence from which a reasonable person could find, by a preponderance, detrimental reliance by and prejudice to Buena Vista.  The undisputed evidence establishes the following:

- ! The contract of insurance clearly and unambiguously excludes indemnification as to punitive and exemplary damages;

- ! The attorney who represented Buena Vista and the Ghaffaris at trial, Michael Garrett, was hand-picked by Dr. Ghaffari.  Garrett, an active trial layer for over thirty years, had represented him in the past and Ghaffari was satisfied with his past representation;

- ! Plaintiff has presented no evidence that attorney Garrett in any way manipulated the defense to the detriment of Buena Vista.  The undisputed affidavit of Michael Garrett shows that he gave Buena Vista an uncompromised and vigorous defense of the punitive damages allegations and specifically sets forth the actions he took in defending those claims *(Defendant's Exh. 3 at ¶ 5)*;

- ! In his June 22, 2000 deposition, Dr. Ghaffari testified that he had some problems with how Mr. Garrett represented both him and his wife individually.  However, he responded in the affirmative when asked if it was his position that Mr. Garrett did a good job of defending Buena Vista (the sole assignor of claims to Plaintiff) against both the compensatory and punitive damage claims; and

- ! Even if Buena Vista had located an independent counsel willing to defend the punitive damages claims at trial, it could not have paid a retainer given its precarious financial situation.

Plaintiff relies on Mr. Rowley's opinion that it would have been difficult to find any competent defense attorney who would take on Buena Vista as a client under the circumstances that existed as of April 1, 1999. *(Plaintiff's Exh. 2 & 3)*.  In other words, Plaintiff argues that CIC effectively denied Buena Vista the opportunity to hire its own counsel to defend against the punitive damage claims.  Viewing this evidence in the light most favorable to Plaintiff, it still fails to support a finding of prejudice.  Buena Vista was represented by its original choice of counsel, and no evidence has been produced that the outcome of the trial would have differed had another

independent attorney been located. Plaintiff having failed to come forward with sufficient evidence to support a finding of prejudice, Defendant is entitled to judgment as a matter of law on the estoppel claim.[3]

### *4. Summary judgment for Defendant should also be entered on the claims for breach of contract and breach of the duty of good faith and fair dealing*

Plaintiff has failed to submit any controverting evidence as to the remaining claims. Although she contends that Defendant failed to comply with Rule 56.1 of our local rules, CIC set forth undisputed facts beginning on page four of its cross-motion for summary judgment and also on pages fifteen through seventeen of its memorandum brief in support. I am unpersuaded that the inclusion of the undisputed facts section within the motion itself precluded Plaintiff from responding to the merits of the motion.

No evidence has been submitted that the policy language could require CIC to retain and pay for separate counsel under the facts of this case. *See Crawford*, 87 N.M. at 380-81. Nor has Plaintiff submitted evidence which would support a finding that CIC violated its any of its expressed or implied contractual duties. Therefore, Defendant is entitled to judgment as a matter of law on these remaining claims as well.

Wherefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment *(Doc. 25)* be, and hereby is, **denied**.

---

[3] Because I reach this conclusion, I need not address CIC's arguments that punitive damages are uninsurable under New Mexico law.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment *(Doc. 33)* is hereby **granted**.  Summary judgment will be entered by separate document pursuant to Rule 58 of the Federal Rules of Civil Procedure.

                                                                  _____
                                                                  **UNITED STATES MAGISTRATE JUDGE**
                                                                  Presiding by consent of the parties


Counsel for Plaintiff:              Warren F. Frost, P.C.
                                             Tucumcari, New Mexico

Counsel for Defendants:        Harrison Yost
                                             THOMPSON, COE, COUSINS & IRONS, L.L.P.
                                             Dallas, Texas

                                             Douglas G. Schneebeck
                                             MODRALL LAW FIRM
                                             Albuquerque, New Mexico